MARK A. CAMPBELL, A/K/A NICOLE
ROSE CAMPBELL,

      Plaintiff,

  v.

KEVIN KALLAS,
JEFF ANDERS,
GARY ANKARLO,
JAMES GREER,
ROBERT HABLE,
RYAN HOLZMACHER,
CATHY A. JESS,
MARY MUSE,
CINDY O'DONNELL,
and
MARK WEISGERBER,

      Defendants.

Case No. 16-cv-00261-jdp

## FIRST AMENDED COMPLAINT UNDER THE CIVIL RIGHTS ACT
## 42 U.S.C. 1983

### COMPLAINT

    COMES NOW, Plaintiff Mark Campbell, a/k/a Nicole Campbell, ("Plaintiff" or "Campbell") by and through her undersigned counsel, and for her First Amended Complaint against Defendants Kevin Kallas ("Kallas"), Jeff Anders ("Anders"), Gary Ankarlo ("Ankarlo"), James Greer ("Greer"), Robert Hable ("Hable"), Ryan Holzmacher ("Holzmacher"), Cathy A. Jess ("Jess"), Mary Muse ("Muse"), Cindy O'Donnell ("O'Donnell"), and Mark Weisgerber ("Weisgerber") (collectively "Defendants"), states as follows:

## NATURE OF ACTION

1. This is an action by Campbell, a transgender male-to-female inmate in the custody of Racine Correctional Institution ("RCI"), whose constitutional rights have been and continue to be violated by the Defendants' continued and consistent deliberate indifference to Campbell's medical needs.

2. Campbell brings this civil rights action under 42 U.S.C. § 1983 to seek declaratory and prospective injunctive relief to redress Defendants' failure to provide Campbell with medically necessary sex reassignment surgeries ("SRS") and other treatments in violation of Campbell's rights under the Eighth Amendment to the United States Constitution. Campbell also seeks actual, consequential, compensatory, and punitive damages, as well as attorneys' fees and costs from Defendants.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the laws and Constitution of the United States, and 28 U.S.C. § 2201, as an actual controversy exists within this Court's jurisdiction.

4. Venue is proper in the Western District of Wisconsin pursuant to 28 U.S.C. § 1391, because the majority of the events giving rise to this action occurred in this district and because Defendants are subject to personal jurisdiction in this district.

5. The Court has authority under 42 U.S.C. § 1983 to award appropriate actual, consequential, compensatory, and punitive damages, and also has authority under 42 U.S.C. § 1988 to award attorneys' fees and costs to successful civil rights plaintiffs.

## PARTIES

6. Campbell is a citizen of Wisconsin currently housed at Racine Correctional Institution ("RCI"), located at 2019 Wisconsin St., Sturtevant, WI 53177.

7. Campbell is a transgender woman, meaning that she was born anatomically male, but has a female gender identity and requires medical treatment to better conform her body to that gender identity. She experiences severe dysphoria and mental distress because of the conflict between her male anatomical features and her female gender identity. Campbell first began feminizing hormone therapy in January 2013 as a component of treatment for her severe unremitting gender dysphoria, yet she still suffers from severe dysphoria and Defendants continue to refuse to allow Campbell to receive the medically necessary surgery.

8. Upon information and belief, Defendant Kallas is a resident of Wisconsin and an adult citizen of the United States. Kallas is employed as the Mental Health Director for the Bureau of Health Services for the Wisconsin Department of Corrections ("WDOC") and is a member of the Gender Dysphoria Committee for the WDOC. Upon information and belief, at all material times, Kallas had the authority to implement state laws regarding the treatment of inmates at WDOC facilities, including evaluating prisoner health care issues and denying or granting relief requested by inmates. Plaintiff sues Kallas for damages in his personal capacity and for declaratory and injunctive relief in his official capacity.

9. Upon information and belief, Defendant Anders is a resident of Wisconsin and an adult citizen of the United States. Anders is employed as the Psychiatry Director for the Bureau of Health Services for WDOC and is a member of the Gender Dysphoria Committee for the WDOC. Upon information and belief, at all material times, Anders had the authority to implement state laws regarding the treatment of inmates at WDOC facilities, including

evaluating prisoner health care issues and denying or granting relief requested by inmates. Plaintiff sues Anders for damages in his personal capacity and for declaratory and injunctive relief in his official capacity.

10. Upon information and belief, Defendant Ankarlo is resident of Wisconsin and an adult citizen of the United States. Ankarlo was employed by the WDOC and was a member of the Gender Dysphoria Committee for the WDOC at all relevant times. Upon information and belief, at all material times, Ankarlo had the authority to implement state laws regarding the treatment of inmates at WDOC facilities, including evaluating prisoner health care issues and denying or granting relief requested by inmates. Plaintiff sues Ankarlo for damages in his personal capacity and for declaratory and injunctive relief in his official capacity.

11. Upon information and belief, Defendant Greer is a resident of Wisconsin and an adult citizen of the United States. Greer is employed as the Director of the Bureau of Health Services for the WDOC and is a member of the Gender Dysphoria Committee for the WDOC. Upon information and belief, at all material times, Greer had the authority to implement state laws regarding the treatment of inmates at WDOC facilities, including evaluating prisoner health care issues and denying or granting relief requested by inmates. Plaintiff sues Greer for damages in his personal capacity and for declaratory and injunctive relief in his official capacity.

12. Upon information and belief, Defendant Hable is a resident of Wisconsin and an adult citizen of the United States. At all relevant times, Hable was employed as the WDOC Deputy Warden for Oshkosh Correctional Institution and was a member of the Gender Dysphoria Committee for the WDOC. Upon information and belief, at all material times, Hable had the authority to implement state laws regarding the treatment of inmates at WDOC facilities, including evaluating prisoner health care issues and denying or granting relief requested by

inmates. Plaintiff sues Hable for damages in his personal capacity and for declaratory and injunctive relief in his official capacity.

13. Upon information and belief, Defendant Holzmacher is a resident of Wisconsin and an adult citizen of the United States. Holzmacher is employed as the Medical Director for the Bureau of Health Services for the WDOC and is a member of the Gender Dysphoria Committee for the WDOC. Upon information and belief, at all material times, Holzmacher had the authority to implement state laws regarding the treatment of inmates at WDOC facilities, including evaluating prisoner health care issues and denying or granting relief requested by inmates. Plaintiff sues Holzmacher for damages in his personal capacity and for declaratory and injunctive relief in his official capacity.

14. Upon information and belief, Defendant Jess is a resident of Wisconsin and an adult citizen of the United States. Jess is employed as the Deputy Secretary of the WDOC. Upon information and belief, at all material times, Jess had the authority to implement state laws regarding the treatment of inmates at WDOC facilities, including evaluating prisoner health care issues and denying or granting relief requested by inmates. Plaintiff sues Jess for damages in her personal capacity and for declaratory and injunctive relief in her official capacity.

15. Upon information and belief, Defendant Muse is a resident of Wisconsin and an adult citizen of the United States. Muse is employed as the Nursing Director for the Bureau of Health Services for the WDOC and is a member of the Gender Dysphoria Committee for the WDOC. Upon information and belief, at all material times, Muse had the authority to implement state laws regarding the treatment of inmates at WDOC facilities, including evaluating prisoner health care issues and denying or granting relief requested by inmates. Plaintiff sues Muse for damages in her personal capacity and for declaratory and injunctive relief in her official capacity.

16. Upon information and belief, Defendant O'Donnell is a resident of Wisconsin and an adult citizen of the United States. O'Donnell was employed as the Secretary for the WDOC at all relevant times, and signed and authorized the August 17, 2015 dismissal of Plaintiff's appeal denying the medically necessary SRS. Upon information and belief, at all material times, O'Donnell had ultimate authority for the operation of the WDOC, including the administration of health care for the inmates. Plaintiff sues O'Donnell for damages in her personal capacity and for declaratory and injunctive relief in her official capacity.

17. Upon information and belief, Defendant Weisgerber is a resident of Wisconsin and an adult citizen of the United States. Weisgerber is employed as the Security Chief for the WDOC and is a member of the Gender Dysphoria Committee for the WDOC. Upon information and belief, at all material times, Weisgerber had the authority to implement state laws regarding the treatment of inmates at WDOC facilities, including evaluating prisoner health care issues and denying or granting relief requested by inmates. Plaintiff sues Weisgerber for damages in his personal capacity and for declaratory and injunctive relief in his official capacity.

18. The WDOC Gender Dysphoria Committee was established under WDOC Division of Adult Institutions Policy 500.70.27. The purpose of the Gender Dysphoria Committee is to evaluate claims from inmates with gender dysphoria and to determine the necessary method of treatment. Defendants Anders, Ankarlo, Greer, Hable, Holzmacher, Jess, Kallas, Muse, and Weisgerber were all members of the WDOC Gender Dysphoria Committee at all relevant times. Defendant O'Donnell was employed as the Secretary for the WDOC at all relevant times. At all relevant times, Defendants were each a person for the purposes of 42 U.S.C. § 1983 and acted under color of state law to deprive Plaintiff of federal rights by

persistently denying Plaintiff desperately needed and medically necessary treatment, as set forth more specifically herein.

19. Plaintiff reserves the right, consistent with all applicable rules and court orders, to amend this Complaint to include additional officials should it become apparent that such officials' inclusion is necessary to grant the prospective injunctive relief requested herein.

## ALLEGATIONS OF FACT

20. Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs as if set forth and fully restated herein.

21. Campbell was assigned male at birth but now identifies as a female. Campbell began feeling uncomfortable about being identified as male at a young age. This manifested itself in Campbell feeling strongly that she was a female, playing with her sisters' dolls, and preferring to play and socialize with girls. She began wearing female clothing between the ages of three and four. Campbell often wore female clothing under her male clothing everywhere throughout her life.

22. Campbell is the youngest of four and has a brother and two sisters. As a child, she identified closely with the women in her life, especially her mother. Campbell's father was physically, emotionally, and verbally abusive towards her, and he expressed discomfort when she dressed like a girl.

23. Campbell has identified as female and lived as a woman, albeit in a compromised form, since childhood. As an adult, she purchased female hormones on the internet from Canada.

24. Gender dysphoria is a recognized medical condition identified in the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders*. DSM-V (5th ed. 2013).

25. Gender dysphoria is a serious health condition that involves a strong conflict between a person's physical gender and the gender with which the person identifies and a persistent discomfort with the person's anatomical sex.

26. The conflict between a person's gender identity and anatomical sex causes individuals with gender dysphoria extreme psychological distress.

27. The World Professional Association for Transgender Health ("WPATH") is the leading professional association for medical professionals who specialize in the medical treatment of individuals with gender dysphoria. Based on decades of clinical experience and research, WPATH publishes the Standards of Care for the Health of Transsexual, Transgender, and Gender Nonconforming People ("SOC") which provide clinical guidance for medical professionals. WPATH's SOC are the prevailing standards for gender dysphoria, and apply equally to inmates and non-inmates.

28. The WPATH SOC dictates that treatment is medically necessary for people with gender dysphoria. The SOC further states that the therapeutic approach includes hormone therapy, living full-time as an individual of the gender matching one's identity, and SRS, and that the course of treatment may differ from person to person depending upon individualized medical evaluations. The SOC also recognizes that SRS is medically necessary for many people with gender dysphoria. In addition to the psychological and medical treatments involved in the therapeutic approach, the SOC recommends additional components of treatment to help alleviate gender dysphoria, including light make-up, electrolysis, and voice therapy.

29. On February 16, 2012, a gender specialist, Cynthia Osborne ("Osborne"), evaluated Campbell for gender dysphoria and the possibility of hormonal treatment.

30. On August 15, 2012, Osborne diagnosed Campbell with severe unremitting gender dysphoria, which is the severest form of gender dysphoria.

31. On September 19, 2012, Kallas, WDOC Mental Health Director, informed Plaintiff that she was approved for hormonal treatment.

32. Plaintiff began hormonal therapy on January 20, 2013, which consisted of Estradiol (Estrogen) 4 mg daily, Spironolactone (Testosterone Blocker) 100 mg daily, a multivitamin daily, Folic Acid 1 mg daily, and baby aspirin 81 mgs daily.

33. On September 27, 2013, Plaintiff's daily dosage for one of the hormones, Spironolactone, was increased from 100 mg to 200 mg daily.

34. Plaintiff's hormone dosages were increased for a second time on October 10, 2014. Plaintiff's daily dosage of Spironolactone was increased from 200 mg to 300 mg daily, and Plaintiff's daily dosage of Estradiol was increased from 4 mg to 6 mg daily. Plaintiff has been on this optimal level of hormones since October 10, 2014. The WPATH SOC recommend on year of hormone therapy in order to qualify for SRS.

35. Despite receiving hormone therapy, Campbell has continued to suffer from severe gender dysphoria, which was her extreme mental distress. Campbell told Osborne of numerous suicidal thoughts and at least one suicide attempt as a result of her gender dysphoria. Further, Campbell told Osborne that she intends to perform SRS on herself and commit suicide if Defendants continue to deny her access to SRS.

36. Plaintiff has made numerous formal and informal requests for SRS since starting hormones in January 2013, as set forth below.

37. On May 9, 2013 Plaintiff first filed a Psychological Services Request (PSR) requesting the SRS. On September 16, 2013, the WDOC Gender Dysphoria Committee denied Plaintiff's request for SRS treatment.

38. On September 17, 2013, when Plaintiff was housed in the Kettle Moraine Correctional Institution, she filed an "Interview Request" slip with that institution's deputy warden requesting SRS. The deputy warden responded to this request by stating that SRS was going to be denied state-wide based on the impossibility of the achieving the "real life" experience in prison.

39. On October 30, 2013, Plaintiff wrote a letter to the WDOC Gender Dysphoria Committee requesting the medically necessary SRS and requesting an evaluation with an additional Gender Specialist other than Osborne. When Plaintiff had not received a response to this request on November 22, 2013, Plaintiff wrote another letter to the Gender Dysphoria Committee again requesting the SRS treatment. On January 31, 2014, Kallas wrote the Plaintiff a letter denying her SRS and informed Campbell that Osborne was the only Gender Specialist in the DOC, but that she can meet with Osborne a second time for reevaluation.

40. On May 19, 2014, Osborne reevaluated Campbell with the purpose of determining whether she is a candidate for SRS. Osborne's evaluation of Campbell makes clear that Campbell had been living as a female most of her life and receiving feminizing hormone therapy for about a year and a half, but still experienced severe distress as a direct result of the discrepancy between her male sex characteristics and her female gender identity. Based on this evaluation, Osborne recommended SRS for Campbell on August 4, 2014.

41. On September 29, 2014, Plaintiff wrote to the Gender Dysphoria Committee requesting approval of SRS based on Osborne's recommendation. Despite Osborne's

10

recommendation, the Gender Dysphoria Committee denied Plaintiff the medically necessary SRS treatment on October 23, 2014.

42.     On March 15, 2015, Plaintiff wrote to the Gender Dysphoria Committee requesting SRS, electrolysis, and light make-up. On April 27, 2015, the Gender Dysphoria Committee denied Plaintiff's request for light make-up, electrolysis, and the medically necessary SRS treatment.

43.     On May 4, 2015, Plaintiff filed an "Offender Complaint" regarding the Gender Dysphoria Committee's denial of her request for medically necessary SRS per Osborne's recommendation for treatment. Having received no answer to her Complaint, Campbell filed an "Inmate Complaint Appeal" on July 9, 2015. On July 22, 2015, the Institution Complaint Examiner ("ICE") dismissed the Complaint on the basis that the ICE lacked the authority to review decisions made by the Gender Dysphoria Committee. On August 17, 2015, O'Donnell dismissed the July 9, 2015 appeal.

44.     On May 5, 2015, Plaintiff filed an "Offender Complaint" regarding the Gender Dysphoria Committee's denial of her request to possess light make-up per Osborne's recommendation for treatment. Having received no answer to her Complaint, Campbell filed an "Inmate Complaint Appeal" on July 9, 2015. On July 22, 2015, the ICE dismissed the Complaint on the basis that the ICE lacked the authority to review decisions made by the Gender Dysphoria Committee. On August 18, 2015, O'Donnell dismissed the July 9, 2015 appeal.

45.     On May 5, 2015, Plaintiff also filed an "Offender Complaint" regarding the Gender Dysphoria Committee's denial of her request for electrolysis. Having received no answer to her Complaint, Campbell filed an "Inmate Complaint Appeal" on July 9, 2015. On July 22, 2015, the Institution Complaint Examiner ("ICE") dismissed the Complaint on the basis

that the ICE lacked the authority to review decisions made by the Gender Dysphoria Committee. On August 17, 2015, O'Donnell dismissed the July 9, 2015 appeal.

46. The Gender Dysphoria Committee consistently denies Campbell's requests for SRS by citing WDOC Division of Adult Institutions Policy 500.70.27, which states, "due to the limitations inherent in being incarcerated, a real-life experience for the purpose of gender-reassignment therapy is not possible for inmates who reside within a correctional facility. However, treatment and accommodations may be provided within the correctional facility to lessen gender dysphoria." DAI Policy 500.70.27, 3 (2015). This policy is contrary to the WPATH SOC, which states, "The SOC in their entirety apply to all transsexual, transgender, and gender-nonconforming people, irrespective of their housing situation. People should not be discriminated against in their access to appropriate health care based on where they live, including institutional environments such as prisons or long-/intermediate-term health care facilities." Eli Coleman et al., Standards of Care for the Health of Transsexual, Transgender, and Gender-Nonconforming People, Version 7, The World Professional Association for Transgender Health, 67 (2011).

47. Campbell's persistent requests for SRS and Osborne's independent evaluation of Campbell demonstrate that Defendants were fully aware of the substantial risk of serious harm associated with denying SRS treatment for Campbell's diagnosed condition of severe unremitting gender dysphoria. Defendants consciously disregarded this risk by denying Campbell's multiple requests for SRS treatment and failing to take any reasonable measures to address the ongoing mental distress that Plaintiff has been suffering as a result of her gender dysphoria, which has not been fully addressed by the feminizing hormone therapy that Plaintiff has been receiving for over four years. Defendants have been consciously and deliberately

indifferent to Plaintiff's medical needs and complaints by failing and refusing to treat Plaintiff with appropriate and necessary surgery, which has resulted in Plaintiff experiencing unnecessary mental distress, among other adverse consequences.

48. Based on the aforementioned repeated requests for SRS, Plaintiff has exhausted all of the available administrative remedies within the WDOC.

## CLAIM FOR RELIEF

49. Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs as if fully set forth and restated herein.

50. Plaintiff brings this cause of action against Defendants in their official and personal capacity pursuant to 42 U.S.C. § 1983 for damages caused by Defendants' deprivation of Plaintiff's constitutionally protected rights by reason of Defendants' continued violation of Plaintiff's substantive rights pursuant to the Eight Amendment of the Constitution of the United States of America.

51. Plaintiff has been diagnosed with the serious medical condition of severe unremitting gender dysphoria which, despite over four years of feminizing hormone therapy, continues to cause serious mental and emotional distress. Plaintiff requires medically necessary SRS treatment as recommended by Osborne and supported by Plaintiff's records and the prevailing medical standards of care.

52. Each Defendant was at all relevant times employed by the WDOC, and as such, was acting in his or her official capacity and under color of state law.

53. Each and every Defendant was aware of Plaintiff's medical need for SRS and overlooked Plaintiff's need, failing to take any measures to address Plaintiff's continued pain and suffering and mental distress.

13

54. Defendants' conduct demonstrates conscious and deliberate indifference to Plaintiff's serious medical needs and violates the Eight Amendment's prohibition on cruel and unusual punishment.

55. By failing to provide SRS to Plaintiff, Defendants have deprived Plaintiff of her right to medically necessary treatment guaranteed under the Eighth Amendment to the United States Constitution.

56. Defendants' persistent denial of SRS is causing irreparable harm to Plaintiff. As a direct and proximate result of Defendants' purposeful and intentional actions, Plaintiff has suffered and continues to suffer injury, including, without limitation, serious physical, psychological and emotional harm, mental anguish, distress, humiliation, and indignity.

57. Further, the constitutional violations of Defendants, as described above, were outrageous and malicious because of their conscious disregard and reckless indifference to the rights of Plaintiff, thereby warranting an award of punitive damages against Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment under her cause of action in favor of Plaintiff and against Defendants:

(a) Awarding Plaintiff preliminary and permanent injunctive relief in the form of a court order directing Defendants to provide Plaintiff with the necessary medical care, including SRS, and other appropriate treatment, including light make-up, electrolysis, breast augmentation, and voice therapy;

(b) Awarding compensatory and punitive damages for Plaintiff's injuries, including, without limitation, Campbell's serious physical, psychological and emotion harm,

mental anguish, distress, humiliation, and indignity, in an amount to be determined by the Court.

(c) Awarding costs for the suit herein, including Plaintiff's reasonable attorneys' fees and expert fees pursuant to 42 U.S.C. § 1988; and

(d) Awarding all other relief that the Court deems just and proper.

Dated this 27th day of March, 2017.

        HUSCH BLACKWELL LLP
        Attorneys for Mark A. Campbell, a/k/a Nicole Rose Campbell

By:  *s/ Iana Vladimirova*
       Thomas P. Heneghan
       WI State Bar No.: 1024057
       Iana A. Vladimirova
       WI State Bar No.: 1052213
       Natalia S. Kruse
       WI State Bar No.: 1105902

P.O. ADDRESS:
33 E. Main Street, Suite 300
P.O. Box 1379
Madison, Wisconsin 53701-1379
608.255.4440
608.258.7138 (fax)
Tom.Heneghan@huschblackwell.com
Iana.Vladimirova@huschblackwell.com
Natalia.Kruse@huschblackwell.com